IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

KATHY LOVE,                )
                           )
        Plaintiff,          )
                           )
    v.                      )      No. 04-4147-CV-C-WAK
                           )
MISSOURI DEPARTMENT OF      )
CONSERVATION, et al.,       )
                           )
        Defendants.         )

## ORDER

In July 2004, plaintiff Kathryn Love filed suit against defendant Missouri Department of Conservation (Department) and John Hoskins, Director of the Missouri Department of Conservation. Plaintiff worked for the Department from 1986 until January 2004, when her employment was terminated. She asserts defendants discriminated against her on the basis of her gender and subjected her to a retaliatory discharge, in violation of Title VII of the Civil Rights Act, 28 U.S.C. § 2000(e) et seq., the Missouri Human Rights Act, Mo. Ann. Stat. § 213.010 et seq. (West 2004), and the First Amendment.

Defendants filed a motion for summary judgment, plaintiff responded in opposition to the motion, and defendants replied. Also pending are motions to strike the affidavit of Joel Vance.

### Summary Judgment Standard

Fed. R. Civ. P. 56(c) requires "the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden on the party moving for summary judgment "is only to demonstrate . . . that the record does not disclose a genuine dispute on a material fact." City of Mt. Pleasant, Iowa v. Associated Elec. Co-Op., 838 F.2d 268, 273 (8th Cir. 1988).

Once the moving party has done so, the burden shifts to the nonmoving party to go beyond his pleadings and show, by affidavit or by "depositions, answers to interrogatories, and admissions on file," that there is a genuine issue of fact to be resolved at trial. Celotex, 477 U.S.

at 323. Evidence of a disputed factual issue which is merely colorable or not significantly probative, however, will not prevent entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Summary judgment, however, "is an extreme remedy, to be granted only if no genuine issue exists as to any material fact." Hass v. Weiner, 765 F.2d 123, 124 (8th Cir. 1985). In ruling on a motion for summary judgment, this court must view all facts in a light most favorable to the nonmoving party, and that party must receive the benefit of all reasonable inferences drawn from the facts. Robinson v. Monaghan, 864 F.2d 622, 624 (8th Cir. 1989).

If "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law," the court must grant summary judgment. Fed. R. Civ. P. 56(c).

## Discussion

Defendants first seek summary judgment on plaintiff's claim that she was demoted, because of her sex, from the position of Outreach and Education Division Director. Defendants state plaintiff cannot establish a prima facie case of gender discrimination because (1) Love was replaced by another female, and (2) the new director did not feel plaintiff was qualified for the position.

To survive a motion for summary judgment, plaintiff must produce either direct evidence that links her termination to gender animus or evidence that creates "an inference of unlawful discrimination through the familiar McDonnell Douglas three-step burden-shifting analysis." Turner v. Gonzales, 421 F.3d 688, 694 (8th Cir. 2005). The parties appear to agree that plaintiff does not have direct evidence of gender discrimination.

Thus, plaintiff must support her claim using indirect evidence. There are four elements to establish a prima facie case of sex discrimination. Plaintiff must show (1) she is a member of a protected class, (2) she was qualified to perform her job, (3) she suffered an adverse employment action, and (4) she was treated differently than similarly-situated persons of the opposite sex. Schoffstall v. Henderson, 223 F.3d 818, 825 (8th Cir. 2000). At issue in this case are elements two and four.

Claimant correctly asserts that her replacement by another female does not necessarily preclude her ability to prove her claim. That fact goes to the weight of the evidence rather than its sufficiency. See Walker v. St. Anthony's Medical Center, 881 F.2d 554, 558 (8th Cir. 1989).

2

Plaintiff, nevertheless, fails to come forward with sufficient evidence to support an inference of unlawful discrimination. Plaintiff's assertions that gender played a role in her demotion and in adverse employment decisions regarding other female employees are not supported by sufficient admissible evidence to create a genuine issue of material fact on the issue for trial.

Likewise, the submitted evidence indicates defendant Hoskins made management changes within plaintiff's division shortly after taking his position with the Department, and plaintiff was demoted as part of those changes. Hoskins made other changes within the Department and the evidence does not support an inference that the changes were motivated by gender animus. Defendants have set forth legitimate business reasons for making the changes. Plaintiff, however, has not come forward with any evidence from which it could be inferred that the stated business reasons are a pretext for gender discrimination.

In the absence of a genuine issue of material fact for trial, Count I of plaintiff's complaint alleging gender discrimination in violation of Title VII and that portion of Count III alleging gender discrimination in violation of the MHRA[1] are dismissed.

Defendants next move for summary judgment on plaintiff's claim of retaliation, as set forth in Count II of the complaint. In her complaint, plaintiff asserts that she was treated differently than similarly situated employees who did not file a charge of discrimination with the EEOC and Missouri Commission on Human Rights.

"The elements of a prima facie case of retaliatory discrimination are: 1) the employee engaged in activity protected under Title VII; 2) an adverse employment action was taken against her; and 3) there was a causal connection between the two." Turner v. Gonzales, 421 F.3d 688, 695-96 (8th Cir. 2005); Sowell v. Alumina Ceramics, Inc., 251 F.3d 478 (8th Cir. 2001). Once plaintiff makes a prima facie case, the burden of production shifts to the defendants to show a legitimate, nondiscriminatory reason for their actions. If they do, the burden then shifts back to the plaintiff to show the stated reason was a pretext. Turner v. Gonzales, 421 F.3d at 696.

---

[1] Claims under the federal discrimination statutes and the Missouri Human Rights Act are analyzed under the same standards. See Finley v. Empiregas, Inc., 975 F.2d 467, 473 (8th Cir. 1992).

3

Here, defendants assert plaintiff cannot show a causal connection between her termination and the filing of her discrimination charges. They state she was fired for violation of the Department's e-mail policy, and the termination occurred approximately eleven months after Love filed her discrimination charge. In response, plaintiff comes forward with evidence that other employees who violated the e-mail policy were disciplined less harshly. She also asserts she was treated differently and given less responsibility after the charges were brought and while she remained employed.

Not every unwelcome change in an employee's job is an actionable adverse employment action, but a change in salary, benefits or responsibilities may be. LaCroix v. Sears, Roebuck, and Co., 240 F.3d 688, 691 (8th Cir. 2001). Furthermore, the passage of nearly a year between the filing of the complaint and an adverse employment action may weaken the showing of a causal link in a retaliation claim. Wallace v. Sparks Health System, 415 F.3d 853 (8th Cir. 2005).

In this case, plaintiff alleges several changes in her work responsibilities, in addition to her ultimate termination. The changes in work responsibilities occurred closer to the time she filed her complaint than did her termination.

The court must give plaintiff the benefit of all reasonable inferences that can be drawn from the facts and must view those facts in the light most favorable to her. In doing so, the court finds that Love has at least minimally shown her responsibilities diminished substantially after she filed the charge. Although defendants have stated what may be a legitimate reason for her discharge, they have not entirely explained the reasons for the changes in her responsibilities and the lack of responsiveness by her supervisors. Viewing the overall record and facts, the court finds plaintiff has created a genuine issue of material fact on whether the changes in her work responsibilities and ultimate termination were motivated by her complaint of discrimination and whether the given reasons for those actions were a pretext for unlawful retaliation.

Finally, defendants request judgment as a matter of law on plaintiff's First Amendment claims. Defendants acknowledge that a public employer may not discharge an employee for engaging in speech protected by the First Amendment. See Sexton v. Martin, 210 F.3d 905, 910 (8th Cir. 2000). They claim plaintiff did not engage in speech on a matter of public concern, but if she did, the balancing of their interests in promoting the efficiency of their services outweighs Love's interest in speaking out.

The parties agree, and carefully set forth in their suggestions, on the standards for analyzing a First Amendment claim and on the steps the court must follow. After carefully considering those standards and appropriate case law, the court finds that Love's e-mail contained speech that was both protected and unprotected. In paragraph three of her e-mail, plaintiff talks about a new organization called Missouri Votes Conservation. She states that organization might be interested in her concerns about the Department's new direction and might want to apply some pressure for change.

In response to defendants' motion for summary judgment, plaintiff asserts that the "Department's use of the sales tax revenues in a way which did not uphold the promises made to the taxpaying public in the Design for Conservation voter initiative" was a public issue about the improper expenditure of public funds. (Doc. 35 at 31.) Although plaintiff's e-mail was not explicit with regard to the "new direction" the department was taking, it did reference pre-design days, and plaintiff's explanation of the issue in her summary judgment suggestions could be believed by a jury. Further, it appears she was hoping to gain support and to obtain some public pressure for her opinion that the changes within the Department were inconsistent with what she believed had been promised to taxpayers. As such, the e-mail addressed a matter of public concern.

Likewise, there were portions of the e-mail that addressed employee dissatisfaction, matters of personal interest, and what might be considered insubordination. Thus, to that extent, plaintiff was speaking on a personal issue, was speaking as an employee furthering her own interests, or was attempting to cause disruption in the office. Accordingly, those portions of her e-mail are not protected speech as defined by the case law. See Schilcher v. University of Arkansas, 387 F.3d 959, 963-69 (8th Cir. 2004).

If plaintiff was fired because she improperly used the e-mail system or because her e-mail was deemed to be insubordination, the termination of her employment would not violate the discrimination laws or the First Amendment. If she was fired in retaliation for having filed a grievance, her termination would be unlawful. If the reason for her termination was engaging in protected speech, the court must consider whether plaintiff's interest in commenting on matters of public concern outweighs the interests of her employer in promoting the efficiency of the public services it performs through its employees. Pickering v. Board of Education, 391 U.S.

563, 568 (1968).  In addressing this issue, the court looks at the manner, time and place of the e-mail, and the context in which it arose.  Rankin v. McPherson, 483 U.S. 378, 388 (1987).  Additionally, other factors, such as the need for harmony in the workplace and whether the speech caused a disruption or deterioration of the work environment, are considered.  Belk v. City of Eldon, 228 F.3d 872, 880-81 (8th Cir. 2000).

Clearly, the e-mail evidences plaintiff's disagreement with changes made by defendant Hoskins and with her desire to shake things up with the Department.  It suggests plaintiff had a problem supporting the program as it then existed and might have had a problem with executing her duties in support of her employer.  The record indicates she had been a candidate for the position held by Hoskins, and she was unhappy with changes in the workplace after he became Director.  She was demoted, transferred, given less responsibilities and suffered a reduction in salary.  Hoskins wanted a new management team, and that new team did not include former managers such as plaintiff.  Plaintiff expressed her opinions during her working hours, on a state-owned computer, to a former employee in a manner that conveyed her lack of support for the current organization.  As such, the e-mail presents the potential for disruption in the workplace.

On the record currently available, the balancing test does not clearly place the interests of one party above the interests of the other parties .  The reason plaintiff was discharged from her employment is a jury question and depends on what facts a jury believes.  Plaintiff challenges the consequences of her violation of the e-mail policy as being harsher than that imposed upon other employees, but the record does not establish whether those employees were similarly situated in all relevant respects.  If the jury believes she was disciplined because of the content of her speech rather than because she violated the e-mail policy, then they must decide whether her discharge was based upon her apparent lack of support for the organization after its change in management, or whether it was based upon her comments of public concern.

Accordingly, there are genuine issues of material fact for trial and defendants have not shown they are entitled to judgment as a matter of law on plaintiff's claim that she was retaliated against in violation of her First Amendment rights.

In considering defendants' motion for summary judgment, the court has not relied upon the affidavit of Joel Vance.  Accordingly, the motions to strike that affidavit are denied as moot.

6

It is therefore,

ORDERED that defendants' motion of October 31, 2005, for summary judgment is denied, in part, and granted, in part, as follows:

1) Count I of plaintiff's complaint alleging gender discrimination in violation of Title VII and that portion of Count III alleging gender discrimination in violation of the MHRA are dismissed;

2) Defendants' motion for summary judgment is denied on plaintiff's claims of retaliation, as set forth in Count II and a portion of Count III; and

3) Defendants' motion for summary judgment is denied on plaintiff's claim of a violation of her First Amendment rights, as set forth in Count IV.

[30] It is further

ORDERED that defendants' motions of December 20, 2005, to strike the Vance affidavit are denied as moot. [40, 41]

Dated this 10th day of March, 2006, at Jefferson City, Missouri.

/s/ William A. Knox

WILLIAM A. KNOX
United States Magistrate Judge